WILLIAM H. STUART, Appellant, *vs.* PATRICK J. CARR, County Treasurer, Appellee.

*Opinion filed February 24, 1928.*

ELECTIONS—*when tax-payer cannot enjoin payment for printing of ballots.* A tax-payer cannot enjoin the county treasurer from paying for the printing of ballots used in an election on the ground that the act under which the nominees were chosen is invalid, as neither the county clerk nor the board of election commissioners in charge of the printing of the ballots is required to determine the validity of the act by which the nominees were determined, nor is the printer required to decide whether the ballots conform to the constitution or the statutes. (*Fahey* v. *City of Bloomington,* 268 Ill. 386, followed.)

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

ROY D. KEEHN, (EDWARD G. WOODS, of counsel,) for appellant.

ROBERT E. CROWE, State's Attorney, THOMAS MARSHALL, and HENRY A. BERGER, for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

On November 14, 1923, appellant, William H. Stuart, filed his bill in the superior court of Cook county to enjoin appellee, Patrick J. Carr, as county treasurer of Cook county, from paying for the printing of the ballots used at

the judicial election of November 6, 1923. A demurrer was sustained to the bill, it was dismissed for want of equity, and an appeal has been prosecuted to this court.

The bill alleged that appellant is a tax-payer of Cook county and filed the bill in order that his burdens as such might not be increased; that a series of enactments specified in the bill were passed by the General Assembly for the nomination and election of superior court judges in Cook county and for increasing the number of judges, the last one being approved May 25, 1923, which provided for the nomination and election of certain judges of the superior court on the first Tuesday after the first Monday in November in certain years; that the General Assembly on June 27, 1921, passed a statute giving to the county conventions of the respective political parties the right to nominate persons for said office; that by an act passed March 9, 1910, as amended June 30, 1913, the General Assembly provided for the election of certain committees and for the holding of conventions of the respective political parties; that the county clerk of Cook county issued a call for an election on November 6, 1923, for twenty judges of the superior court for the full term and to fill certain vacancies; that no primary election was held to determine the candidates for said office and no nominations were made for the office except the pretended nominations mentioned in the bill; that on October 5, 1923, certain persons claiming to be the county convention of the democratic party met and pretended to nominate twenty persons as candidates of said party for the office of judge of the superior court; that on the same day similar nominations were made by the republican party; that the pretended nominations were certified to the county clerk of Cook county. The bill further alleged that the act of May 25, 1923, together with the act of March 9, 1910, which provides for the holding of county conventions of the different political parties and the nomination of candidates, being sections 9 and 10 of the last

mentioned act, are unconstitutional, void, and of no force and effect; that the city of Chicago has a population in excess of 200,000, and prior to 1922 it was divided into 35 wards; that in 1922 it was re-divided into 50 wards, and in the re-division the boundary lines of every ward except one were changed; that at the supposed meeting of the county convention of the democratic party held on October 5, 1923, 50 persons attended and claimed to be ward committeemen; that 21 of these persons had not been elected by any primary held in the city but all of them had been appointed by the city central committee of the democratic party contrary to law, by reason whereof certain wards of the city were not represented in the meeting; that the remaining 29 persons had been elected at a primary in 1916 in other and different wards than those which they pretended to represent; that in the supposed county convention of the republican party 34 persons claimed to be ward committeemen; that in 1920 a successor to one ward committeeman had been appointed by the city central committee of said party; that the remaining 33 persons so pretending to be committeemen had been elected in 1916; that the law requires that no names except those of legally nominated candidates be printed on the ballots; that the ballots as printed by the county clerk and board of election commissioners were illegal, in that none of the persons whose names appeared thereon were nominated according to law; that approximately $15,000 was contracted to be spent in obtaining and distributing these ballots; that warrants were about to be drawn upon the county treasurer, which will be paid unless the county treasurer is enjoined from making the payments; that the liability of the county for printing these ballots is not a valid claim to be charged against the county, and the payment of such warrants would be an unlawful burden upon appellant and other persons similarly situated as tax-payers. The bill prayed that the county treasurer be enjoined from paying such warrants.

The question for determination is whether the bill was sufficient to entitle appellant to relief. The bill was filed for the purpose of enjoining payment for the printing of ballots used at an election provided by law. It is not alleged that the statute providing for this election was unconstitutional or that the election was not held in all respects as provided by the statute. Section 1 of the Ballot law of 1901 (Cahill's Stat. 1927, p. 1130,) provides that in all elections hereafter to be held in this State for public officers, except certain officers therein specified, the vote shall be by ballot printed and distributed at public expense, and no other ballot shall be used. Section 2 provides that the printing and delivery of the ballots shall, except in the case of cities, villages and towns, be paid for by the several counties, respectively. Section 15 provides that for all elections to which this act applies the county clerks in their respective counties shall have charge of the printing of the ballots for all general elections and shall furnish them to the judges of election, provided that in cities, towns and villages having a board of election commissioners such board shall have charge of the printing of the ballots and shall furnish them to the judges of election within the territory under their jurisdiction. Under these sections of the statute it was the duty of the board of election commissioners to have the ballots printed in the city of Chicago and the duty of the county clerk of Cook county to have them printed for Cook county outside of the city. It was the duty of these respective officers to have these ballots printed, regardless of whether nominations were or were not made. Even if no nominations had been made, the respective officers were under the duty of furnishing the ballots so that the voters might write in the names of the persons of their choice for these offices. These officers were ministerial officers, and in causing the ballots to be printed they acted in a ministerial capacity and not as judicial officers. It was not their province to determine the

constitutionality of any act of the legislature or refuse to observe it. Nor was it the province of the printer to decide whether the ballots conformed to the constitution and statutes. These were legal questions, which the officers might not be able and were not bound to answer. There is no claim that the officers in having the ballots printed, or the printer in printing them, did not act in good faith, relying upon the statute and supposing their acts were in accordance with the law. The county had the benefit of the ballots, the election was held with them, and officers were elected. The officers charged with the duty of printing the ballots having ordered ballots printed and the county having used them, the county cannot now claim that they were not the kind of ballots the officers should have furnished and thus escape paying for them. The county itself having no defense against the claim, there is no equity in appellant's bill to enjoin its payment. All of these questions were decided by this court in *Fahey* v. *City of Bloomington,* 268 Ill. 386, and it was there held that the question of the constitutionality of the law did not affect the right of the printer of the ballots which were used at the election to collect his pay for his material and labor; that the law provides a method by which persons interested may procure a decision of the questions here sought to be raised but that they could not be raised in a proceeding to enjoin payment for printing the ballots.

The demurrer was properly sustained, the bill was properly dismissed for want of equity, and the decree will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*